**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | |
|---|---|
| LINDA DOWNEY,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>**Commissioner of the Social**<br>**Security Administration,**<br><br>Defendant. | No. EDCV 08-380 AJW<br><br>MEMORANDUM OF<br>DECISION |

Plaintiff filed this action seeking reversal of the decision of the defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for disability insurance benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

The procedural facts are not disputed and are recited in the Joint Stipulation. [See JS 2]. Plaintiff alleged that she became disabled as of October 1, 2004, due to scoliosis of the spine, minimal degenerative changes of the knees, and multiple musculoskeletal complaints. [JS 2]. After her application was denied initially and upon reconsideration, plaintiff requested that the evidence on the record be considered without a hearing. [JS 2]. See 20 C.F.R. §§ 404.939, 404.948(b). In a written decision dated October 12, 2006 that constitutes the Commissioner's final decision in this matter, an Administrative Law Judge (the "ALJ") found that plaintiff retained the

residual functional capacity ("RFC") to perform medium work and that her RFC did not preclude performance of her past relevant work as a medical clerk in an office setting. [JS 2; Administrative Record ("AR) 15-18].

## Standard of Review

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Stout v. Comm'r Social Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)(internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Soc. Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir.1999)).

## Discussion

### Substantial gainful activity

Plaintiff contends that the ALJ erred in determining that plaintiff engaged in substantial gainful activity ("SGA") after her alleged date of onset of disability. [See JS 3-5].

At step one of the sequential evaluation, the ALJ found that plaintiff engaged in SGA after October 1, 2004, her alleged onset date, on the grounds that plaintiff had earnings of $5,677 in 2005 and $4,140 in 2006 from part-time clerical work in an optometrist's office.[1] [AR 15, 41-42]. The ALJ noted that 2007 earnings figures were not yet available, so "I have no documentary

---

[1] The ALJ's finding that plaintiff engaged in SGA is contrary to the conclusion reached by a Social Security Administration "interviewer/reviewer," who noted on November 15, 2005 that plaintiff's "wages have been below SGA since her alleged onset date." [AR 82].

- 2 -

evidence that the claimant has ever ceased to engage in work activity, probably in her usual employment as a medical office clerk." [AR 15]. Although the ALJ did not deny benefits at step one, he explicitly relied on his SGA finding in evaluating plaintiff's RFC and to support his step-four determination that plaintiff retained the RFC to perform her past relevant work. [AR 15-18].

Under the regulations, if a claimant has average monthly earnings above a prescribed amount, a presumption ordinarily arises that a claimant has engaged in substantial gainful activity, while average monthly earnings at or below the prescribed amount ordinarily establish a presumption that the claimant has not engaged in substantial gainful activity. 20 C.F.R. § 404.1574(a)& (b). Plaintiff had average monthly earnings of approximately $473 in 2005 and $345 in 2006. Those earnings were significantly below the level that presumptively establishes SGA; therefore, plaintiff's earnings established a presumption that she did not engage in SGA in 2005 or 2006. See 20 C.F.R. § 404.1574(b)(2)(ii), (b)(3).[2]

In certain circumstances the ALJ may consider information in addition to earnings to rebut the presumption of SGA. See 20 C.F.R. § 404.1574(b)(3). In this case, however, the ALJ found that plaintiff had engaged in SGA without discussing the application of the presumption against a finding that plaintiff engaged in SGA or any evidence rebutting the presumption. Moreover, the ALJ speculated that plaintiff continued to work in 2007 without, apparently, making any attempt to verify her employment status. According to a letter in the record from plaintiff's non-attorney representative, plaintiff ceased working on account of her impairments in September 2006, and

---

[2] For calendar years 2001 and after, earnings "will ordinarily show that you have engaged in substantial gainful activity" if "they average more than the larger of" either "[t]he amount for the previous year," or

> [a]n amount adjusted for national wage growth, calculated by multiplying $700 by the ratio of the national average wage index for the year 2 calendar years before the year for which the amount is being calculated to the national average wage index for the year 1998. We will then round the resulting amount to the next higher multiple of $10 where such amount is a multiple of $5 but not of $10 and to the nearest multiple of $10 in any other case.

See 20 C.F.R. § 404.1574(b)(2). It is not disputed that monthly average earnings of $920 in 2005 and $970 in 2006 were needed to give rise to a presumption of SGA. [JS 4].

1 he notified the Social Security of that fact. [AR 353].

2 Accordingly, the ALJ erred in relying on plaintiff's earnings to show that she engaged in
3 SGA. See Lewis v. Apfel, 236 F.3d 503, 515-516 (9th Cir. 2001)(noting that the ALJ must inquire
4 whether the claimant can work "on a regular and continuing basis," and holding that where the
5 ALJ failed to rebut the earnings presumption with respect to the claimant's part-time work, the
6 ALJ erred in finding that the claimant's past work was substantial gainful activity).

7 Defendant contends that any error by the ALJ was not "material" because the ALJ did not
8 deny plaintiff's claim at step one. The ALJ, however, explicitly relied on plaintiff's purported
9 ability to engage in SGA to reject the alleged severity of plaintiff's subjective complaints and to
10 disregard a disability opinion from plaintiff's treating physician, Dr. Bramson. [AR 17-18]. The
11 ALJ's error was material and not harmless because it "impacted the validity of the ALJ's
12 decision," and thus is not "inconsequential to the ultimate nondisability determination." Carmickle
13 v. Comm'r, Social Sec. Admin., 533 F.3d 1155, 1162-1163 (9th Cir. 2008)(italics omitted)(quoting
14 Stout, 454 F.3d at 1054).

15 **Treating physician's opinion**

16 Plaintiff contends that the ALJ improperly rejected the opinion of treating physician Walter
17 Bramson, M.D. [See JS 5-15].

18 Dr. Bramson wrote a letter dated April 1, 2006 and completed an assessment form dated
19 May 1, 2006. [AR 109-114]. On the form, Dr. Bramson indicated that plaintiff could perform
20 what amounts to less than sedentary work. [AR 109-1112]. In the letter, Dr. Bramson opined that
21 plaintiff had been "completely and permanently disabled" since October 2004. [AR 113]. Dr.
22 Bramson attributed plaintiff's functional deficits to "degenerative disc disease, with complicating
23 fibromyalgia syndrome, possibly causative scoliosis (severe and progressive), and complicating
24 but not causative osteoporosis (proved by bone density testing)." [AR 113].

25 In general, a treating physician's opinion is entitled to greater weight than those of
26 examining or non-examining physicians because "treating physicians are employed to cure and
27 thus have a greater opportunity to know and observe the patient as an individual . . . ." Edlund
28 v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001) (quoting Smolen v. Chater, 80 F.3d 1273,

1285 (9th Cir. 1996) and citing Social Security Ruling ("SSR") 96-2p); see 20 C.F.R. §§ 404.1502, 404.1527(d)(2), 416.902, 416.927(d)(2). A treating physician's "continuing relationship with the claimant" makes that physician "especially qualified . . . to form an overall conclusion as to functional capacities and limitations, as well as to prescribe or approve the overall course of treatment." Lester v. Chater, 81 F.3d 821, 833 (9th Cir. 1995). When a treating physician's medical opinion as to the nature and severity of an individual's impairment is well-supported and not inconsistent with other substantial evidence in the record, that opinion must be given controlling weight. Edlund, 253 F.3d at 1157; Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); see 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); SSR 96-2p. Even when not entitled to controlling weight, "treating source medical opinions are still entitled to deference and must be weighed" in light of the factors set forth in the regulations. Edlund, 253 F.3d at 1157 (quoting SSR 96-2p and citing 20 C.F.R. § 404.1527; 20 C.F.R. § 416.927)[3]; Holohan, 246 F.3d at 1202. In order to reject a treating physician's opinion that is contradicted by the opinion of another physician, the ALJ must articulate "specific and legitimate reasons supported by substantial evidence in the record for doing so." Tonapetyan, 242 F.3d at 1148 (9th Cir. 2001) (quoting Lester, 81 F.3d at 830).

The ALJ's reasons for rejecting Dr. Bramson's opinion in favor of the opinion of the nonexamining state agency physicians are legally erroneous and lack substantial support in the record. First, the ALJ said that Dr. Bramson's opinions "clearly represent accommodative opinions in the nature of professional courtesy to another employee in health service." [AR 17-18]. That cynical assessment bears no rational relationship to the evidence in the record. Plaintiff had been Dr. Bramson's patient for 13 1/2 years. [AR 113-114]. Some treatment notes were included in the record. [See AR 88, 91-96, 115-136]. Dr. Bramson identified the diagnoses, signs, and symptoms on which he relied. [AR 112-114]. He wrote two reasoned, relatively detailed letters

---

[3] The factors include: (1) the length of the treatment relationship; (2) the frequency of examination; (3) the nature and extent of the treatment relationship; (4) the extent to which the diagnosis is supported by the findings; (5) consistency of the opinion with other medical evidence; and (6) the physician's specialization. See 20 C.F.R. §§ 404.1527, 416.927; Edlund, 253 F.3d at 1157 n.6.

on plaintiff's behalf before the ALJ's decision was issued, and a third after the ALJ denied benefits. [AR 86, 113-114, 351-352]. The notion that Dr. Bramson simply extended plaintiff "professional courtesy" is unfounded.

Second, the ALJ said that Dr. Bramson's opinions "are exaggerated and completely unsupported by his own records or any other evidence of record as noted above." [AR 18]. This is not a case in which the treating physician simply checked off boxes on a form with no explanation. In his April 2006 letter, Dr. Bramson listed diagnoses and clinical observations supporting his opinion. Dr. Bramson said that plaintiff's x-rays supported his opinion. He assessed the nature, location, precipitating factors, and intensity of plaintiff's symptoms, which he described as "usual pain between 6-9 on a scale of 1-10"and muscle spasms. [AR 113-114]. He noted that he and plaintiff's treating chiropractor, Dr. McElhannon, had arrived at similar ("minimally different") diagnoses and agreed that plaintiff's impairments were disabling. [AR 113].

In a second letter written in January 2007 in response to the denial of plaintiff's claim on reconsideration, Dr. Bramson took exception to inferences drawn by the state agency medical consultant from plaintiff's annual physical examination, which "does not discuss the issue of the disability." [AR 86; see AR 83-87]. Dr. Bramson explained that the purpose of an annual examination is to detect new or previously undetected conditions or problems. He explained that the patient "is not assessed for existing disabilities to see if they are still disabled, which is why an entirely different visit and different set of notes are done on the disability." [AR 86].

In a third letter submitted to the Appeals Council, Dr. Bramson undertook a rebuttal of the ALJ's reasons for rejecting his disability opinion. He contended that the ALJ failed to appreciate the progressive nature of chronic disease, did not give sufficient weight to plaintiff's subjective symptoms, and did not properly review or assess the x-ray evidence of spinal disease correlating the severity of plaintiff's subjective complaints. [AR 351-352].

The record also includes some treatment reports from Dr. Bramson. Those treatment reports document at least some of the diagnoses and symptoms Dr. Bramson described in his letters. [See AR 88, 91-96, 115-136].

The ALJ inaccurately portrayed Dr. Bramson's opinion as wholly conclusory and unsupported by any objective or clinical evidence in the record. He also disregarded the principles, reflected in the Commissioner's own policy guidelines as well as Ninth Circuit law, that a treating source medical opinion may be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and entitled to deference "even if it is not fully supported by such evidence," SSR 96-2p, 1996 WL 374188, at *3-*4, and that the subjective judgments of treating physicians must be considered. See Edlund, 253 F.3d at 1157; Lester, 81 F.3d at 833; see also Holohan, 246 F.3d at 1202 ("In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.")(quoting SSR 96-2p); Regennitter v. Comm'r of the Social Sec. Admin., 166 F.3d 1294, 1298 (9th Cir. 1999)("The ALJ must do more than offer his own conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.")(quoting Embrey v. Bowen, 849 F.2d 418, 421 (9th Cir. 1988)).

In sum, the ALJ's reasons for disregarding Dr. Bramson's opinions are not sufficiently specific, lack substantial support in the record, and do not reflect application of the correct legal standards.

**Treating chiropractor**

Plaintiff contends that the ALJ improperly rejected the opinion of her treating chiropractor, Dr. James E. McElhannon. [See JS 15-19].

Evidence from an "acceptable medical source" is required to establish the existence of a "medically determinable impairment," that is, an impairment that can serve as the basis for a finding of severity or disability. See 20 C.F.R. §§ 404.1508, 404.1513(a), 416.908, 416.913(a). Unlike a licensed physician or psychologist, a chiropractor is not an "acceptable medical source" whose findings can establish the existence of a medically determinable impairment. A chiropractor falls into the category of "other sources." See 20 C.F.R. §§ 404.1513(d), 416.913(d). The ALJ "may also use" information in the record from "other sources" "to show the severity" (but not the existence) of a claimant's medically determinable impairments and how those impairments affect the ability to work. 20 C.F.R. §§ 404.1513(d), 416.913(d). The ALJ, however, is not required to

1    give that information the same weight as information from an acceptable medical source. See
2    Gomez v. Chater, 74 F.3d. 967, 970-971 (9th Cir.)(explaining that opinions from "other sources"
3    may be given less weight than those from "acceptable medical sources" under the governing
4    regulations), cert. denied, 519 U.S. 881 (1996).

5    In April 2006, Dr. McElhannon opined that plaintiff, whom he had treated "intermittently"
6    since November 2004, had "spinal derangements of her neck, middle and lower back due to
7    scoliosis and fibromyalgia," "derangement of her right knee," and suffers "a great deal of pain and
8    disability." [AR 118]. Dr. McElhannon also opined that plaintiff was disabled due to her
9    impairments. [AR 118].

10   The ALJ did not err in failing to adopt Dr. McElhannon's disability opinion, but the ALJ
11   was not authorized to disregard Dr. McElhannon's opinion altogether and then reject Dr.
12   Bramson's consistent opinion on the ground that it was unsupported by "any other evidence of
13   record." [AR 18]. This is particularly true in the circumstances of this case, where Dr. Bramson
14   expressly noted that he and Dr. McElhannon concurred in their assessment of plaintiff's diagnoses
15   and disability. See SSR 06-03p, 2006 WL 2329939, at *3 (stating that information from other
16   medical sources is "important and should be evaluated on key issues such as impairment severity
17   and functional effects, along with the other relevant evidence in the file," and that information
18   from other sources that "tend[s] to support or contradict a medical opinion" can be "important").

19   **Remand for further proceedings or payment of benefits**

20   The choice whether to reverse and remand for further administrative proceedings, or to
21   reverse and simply award benefits, is within the discretion of the court. See Harman v. Apfel, 211
22   F.3d 1172, 1178 (9th Cir.) (holding that the district court's decision whether to remand for further
23   proceedings or payment of benefits is discretionary and is subject to review for abuse of
24   discretion), cert. denied, 531 U.S. 1038 (2000). The Ninth Circuit has adopted the following test
25   to determine whether evidence should be credited and the case remanded for an award of benefits:
26       (1) the ALJ has failed to provide legally sufficient reasons for rejecting such
27       evidence, (2) there are no outstanding issues that must be resolved before a
28       determination of disability can be made, and (3) it is clear from the record that the

ALJ would be required to find the claimant disabled were such evidence credited. Harman, 211 F.3d at 1178 (quoting Smolen, 80 F.3d at 1292). Where the test is satisfied with respect to the evidence in question, "then remand for determination and payment of benefits is warranted regardless of whether the ALJ might have articulated a justification for rejecting" that evidence. Harman, 211 F.3d at 1179; see Varney v. Sec'y of Health & Human Servs., 859 F.2d 1396, 1400-1401 (9th Cir. 1988). The Ninth Circuit's test, however, "does not obscure the more general rule that the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings." Harman, 211 F.3d at 1179.

In this case, the ALJ erred in finding that plaintiff engaged in SGA after her alleged onset date, and he did not articulate legitimate reasons for discrediting the treating source opinions, satisfying the first prong of the test. That does not necessarily mandate a finding of disability, however. In Harman, the court explained that the treating physician's opinion that the claimant in that case was "totally disabled" due to subjective symptoms associated with his impairments "is a medical rather than a legal conclusion." Harman, 211 F.3d at 1180. In that case, the ALJ denied benefits at step five without taking testimony from a vocational expert as to whether the specific limitations found by the treating physician would preclude the claimant from performing any work. Harman, 211 F.3d at 1180. In the absence of such testimony, the court held that a remand for further proceedings was required under the second and third prongs of the Ninth Circuit test. Harman, 211 F.3d at 1180.

A remand for further proceedings is the appropriate remedy in this case. On remand, the ALJ should augment the record, give plaintiff the opportunity for a new hearing, and issue a new hearing decision that is based on the evidence of record, properly evaluates the record as a whole, and includes specific findings regarding plaintiff's performance of SGA after her alleged onset date, her RFC, and her ability to perform her past relevant work or alternative work.[4]

///

///

---

[4] This disposition makes it unnecessary to consider plaintiff's additional contentions.

**Conclusion**

For the reasons stated above, the Commissioner's decision is **reversed**, and this case is **remanded** to the Commissioner for further proceedings consistent with this memorandum of decision.

**IT IS SO ORDERED.**

DATED: September 3, 2009

_____
ANDREW J. WISTRICH
United States Magistrate Judge